IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALIVIA UCHITEL,<br>　　　　　**Plaintiff,**<br><br>　　　v.<br><br>SOLID WASTE SERVICES, INC. d/b/a/<br>J.P. MASCARO & SONS,<br>　　　　　**Defendants.** | CIVIL ACTION<br><br><br><br>NO.  22-1790 |

<u>MEMORANDUM</u>

**HODGE, J.**                                                                                                              **January 23, 2025**

## I.　INTRODUCTION

Plaintiff Alivia Uchitel ("Plaintiff") brought the instant claim alleging sex-based violations of Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 *et seq.*, alleging that Defendant discriminated against her based on her sex and retaliated against her based on her complaints about the same. Defendant Solid Waste Services, d/b/a J.P. Mascaro & Sons ("Defendant" or "Mascaro") now moves for summary judgment (the "Motion") (ECF No. 27), arguing that none of the alleged conduct is actionable under Title VII or the PHRA. Upon consideration of the Motion and any responses and replies thereto (ECF Nos. 28, 30, 31), the Court denies Defendant's Motion for Summary Judgment.

## II.　BACKGROUND

### A.　Factual Background

Plaintiff Alivia Uchitel is a female and was hired as the Office Manager for the Souderton Division of Defendant Mascaro – a solid-waste transfer station – on September 16, 2020. (ECF No. 1 at ¶ 2; ECF No. 27-1 at ¶ 2.) As Office Manager, Plaintiff reported directly to

Jonathan Bartlett ("Bartlett"), the General Manager of the Souderton Division. (ECF No. 27-1 at ¶ 4, 13.) Bartlett was the highest-level employee at the Souderton division. (ECF No. 28-3 at ¶ 17.) Bartlett reported to Tim Laux ("Laux") (Director of Operations) and Lynnda Petrucelli ("Petrucelli") (Human Resources Manager). (*Id.* at ¶¶ 14, 16.) Laux reported to Pasquale Mascaro, Sr. ("Mascaro, Sr") (President) and Petrucelli reported to Pasquale Mascaro, Jr. ("Mascaro, Jr.") (Director of HR). (*Id.* at ¶¶ 3, 15) Plaintiff alleges that during her time at Mascaro, between September 16, 2020 and December 9, 2020, she was the victim of repeated, actionable harassment and retaliation perpetrated by Bartlett, her male supervisor. (*See generally* ECF No. 1.)

On November 6, 2020, Bartlett called Plaintiff in for her first performance review (hereinafter the "Initial Performance Review"). (ECF No. 27-1 at ¶ 20; ECF No. 28-3 at ¶ 48.) During the meeting, Bartlett told Plaintiff that he wanted her to "socialize more with him and the (male) drivers." (ECF No. 27-1 at ¶ 23; ECF No. 28-3 ¶ 49.) Plaintiff testified that she understood this comment as an indication that Bartlett "wanted her to flirt with him and . . . the male employees and act socially with them outside of a professional level while she was at work." (ECF No. 28-3 at ¶ 50.)

Later that same day, Bartlett called Plaintiff on the phone pretending to be an angry customer initiating a complaint against a Mascaro driver (hereinafter the "Prank Phone Call"). (ECF No. 27-1 at ¶ 27; ECF No. 28-3 at ¶ 54.) The fictitious customer was purportedly upset with the Mascaro driver because the customer could see the driver "pleasuring himself" in his truck. (ECF No. 27-1 at ¶ 29; ECF No. 28-3 at ¶ 54.) Just before the conclusion of the call, Plaintiff could hear Bartlett and other co-workers laughing in the background. (ECF No. 27-1 at ¶ 30; ECF No. 28-3 at ¶ 54.) After Bartlett hung up, he walked up to her desk, laughing, and told

2

her that "it was her initiation." (*Id.*) Plaintiff left work that day "humiliated" and in tears because of the phone call. (*Id.*)

Three days later, on November 9, Bartlett brought meatloaf sandwiches in for lunch for the office staff (hereinafter the "Meatloaf Incident"). (ECF No. 27-1 at ¶ 31.) During lunch, Bartlett asked Plaintiff "if she was ready to taste his meat;" if "she liked having his meat in her mouth;" and if "she liked tasting his meat." (ECF No. 27-1 at ¶ 33; ECF No. 28-3 at ¶ 78.) Plaintiff testified that when Bartlett made these comments to her, it was "very clear" that "he was making inappropriate…sexually-related comments." ECF No. 28-3 at ¶ 84.) Plaintiff did not immediately report Bartlett's conduct to Defendant's Human Resources Office. (ECF No. 27-1 at ¶ 33; ECF No. 28-3 at ¶ 78.)

On November 30, Plaintiff was summoned for a meeting with Bartlett and Petrucelli about her work performance. (ECF 27-1 at ¶ 34; ECF No. 28-3 at ¶ 92.) In the meeting, Bartlett told Plaintiff that "she was not doing enough and that she was on her phone too often." (ECF 27-1 at ¶ 35; ECF No. 28-3 at ¶ 94–95.) Prior to the meeting, Bartlett had communicated to Plaintiff that she was doing well in her position. (ECF 27-1 at ¶ 35; ECF No. 28-3 at ¶ 97.) Given the "tone and tenor of the November 30th meeting," Plaintiff became "fearful about the impact on her employment." (ECF No. 28 at 11–12 (citing ECF No. 28-3 at ¶¶ 98–99, 103.)

Following the November 30 meeting, Plaintiff decided to report Bartlett's conduct. (ECF 27-1 at ¶ 41; ECF No. 28-3 at ¶ 103.) On December 2, Plaintiff emailed Petrucelli and Mascaro, Jr. and said that she "ha[d] been hesitant to report [Bartlett's conduct] for fear of retaliation and a hostile work environment." (ECF No. 27-14 at 4.) Petrucelli emailed Plaintiff shortly thereafter recommending that they meet offsite to discuss further and asking Plaintiff for a good time to call her to arrange a meeting. (ECF No.27-1 at ¶ 42.) Plaintiff spoke to Petrucelli by phone that

same day. (ECF No. 28-3 at ¶ 106.) The next day, Petrucelli emailed Plaintiff summarizing their phone conversation. Petrucelli wrote:

> As we discussed and you agreed that you are satisfied with settling this issue as long as Jon Bartlett keeps the work environment professional and to treat you with respect going forward.
>
> I spoke to Jon yesterday and reviewed the incident with him, he agreed that he would keep the work environment professional going forward.

(ECF No. 27-1 ¶ 43.) Plaintiff responded to Petrucelli stating that "as long as John Bartlett maintains a professional work environment and treats me with professionalism and respect[,] I will have no issue with putting this behind me and moving forward." (ECF No. 27-1 ¶ 44.) Plaintiff also reiterated her desire to "make [her] concerns about a hostile work environment, retaliation, and unfair and prejudice[d] decision making about [her] future (reviews and pay) noted." (*Id.*)

On December 4, Bartlett instructed Plaintiff to attend a division safety meeting at 5:00 a.m. on December 9 (hereinafter the "Safety Meeting Request"). (ECF No. 27-1 at ¶ 46; ECF No. 28-3 at ¶ 133.) Shortly before the December 9 safety meeting, Bartlett emailed Plaintiff recommending she participate in ride-alongs with Mascaro drivers. Bartlett gave Plaintiff details regarding who she should accompany on the ride-alongs as well as a justification for sending Plaintiff on the ride-alongs (hereinafter the "Ride-Along Request"). (ECF No. 27-16 at 2.) Plaintiff forwarded Bartlett's email to Petrucelli and Mascaro, Jr., asking them to confirm whether she would be expected to participate in the ride-along, given that when she was hired, Petrucelli told her that she would never need to ride in a truck. (ECF No. 27-17 at 2.) Mascaro, Jr. responded that while he "wouldn't want [Plaintiff] to do anything [she's] uncomfortable with . . . [the ride-alongs are] a standard learning experience that [he] would recommend [she] take advantage of." (*Id.* at 5.) Plaintiff then emailed Bartlett informing him that she would not be

4

participating in the ride-alongs. (ECF No. 27-16 at 2.) Plaintiff also responded to Mascaro, Jr. stating that since she reported Bartlett for harassment, he created a "hostile and uncomfortable" environment by asking her to participate in the ride alongs, acting "visibly annoyed" when she goes into his office for paperwork, and placing paperwork on her desk with a note that read "Please Relocate." (ECF No. 27-17 at 3–4.) Mascaro, Jr. responded to Plaintiff acknowledging that he deemed "the phone call incident" to be "inappropriate," but that the additional issues she reported did not "raise a red flag" to him. (*Id.* at 3.) Plaintiff then sent Mascaro, Jr. her resignation stating that she "will never feel comfortable" as Bartlett's treatment of her is hostile and unprofessional. (ECF No. 27-10 at 2.)

## III. LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under this standard, a fact is "material" where it "might affect the outcome of the suit under governing law," and a dispute is "genuine" where there is a "sufficient evidentiary basis on which a reasonable jury could find for the non-moving party." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). "Summary judgment must be granted against a party who fails to establish the existence of an essential element to that party's case, if that party will bear the burden of proof at trial." *Kendrell v. Sec'y United States Dep't of Defense*, 851 F. App'x 317, 319 (3d Cir. 2021).

The Court must also consider the Third Circuit's guidance that "[s]ummary judgment is to be used sparingly in employment discrimination cases[.]" *Doe v. C.A.R.S. Prot. Plus*, 527 F.3d 358, 369 (3d Cir. 2008). In such cases, "where intent and credibility are crucial issues," the Court

is instructed to apply the Rule 56 standard "with added rigor," *Stewart v. Rutgers, State Univ.*, 120 F.3d 426, 431 (3d Cir. 1997), mindful that "credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255; *Leone v. Air Products & Chemicals, Inc.*, 2008 WL 1944104, at *1 (E.D. Pa. 2008). As such, the non-movant's claim will survive where she can show "sufficient evidence supporting the claimed factual dispute" to "require a jury or judge to resolve [at trial] the parties' differing versions of the truth." *Jackson v. University of Pittsburgh*, 826 F.2d 230, 233 (3d Cir. 1987).

## IV.   DISCUSSION

### A.   Hostile Work Environment

To succeed on her claim for hostile work environment, Plaintiff must establish that she (1) suffered intentional discrimination because of her sex; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected her; (4) the discrimination would have detrimentally affected a reasonable person in like circumstances; and (5) the existence of *respondeat superior* liability. *See, e.g.*, *Mandel v. M&Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013). The Court's evaluation of a hostile work environment claim requires consideration of the totality of the circumstances, rather than a focus solely on individual circumstances. *See, e.g.*, *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1484 (3d Cir. 1990).

Defendant disputes only the second element of Plaintiff's sex-based hostile work environment claim, arguing that the alleged discrimination that Plaintiff was subjected to was not severe or pervasive. (ECF No. 27-25 at 25.) To assess whether harassment is severe or pervasive, the Court must consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably

interferes with an employee's work performance." *EEOC v. Smokin' Joe's Tobacco Shop, Inc.*, 2007 WL 1258132 (E.D. Pa. Apr. 27, 2007) (*quoting Harris v. Forklift Sys.*, 510 U.S. 17, 23 (1993)).

Plaintiff points to multiple allegations of sex-based conduct to demonstrate that she has established that the discrimination she experienced was severe or pervasive, including: the Prank Phone Call and the Meatloaf Incident. (ECF No. 28 at 15–19.) Defendant counters that the circumstances Plaintiff describes do not meet the requisite standard because Plaintiff:

> admits that Bartlett never: propositioned her for any sexual activity; made any references to any sexual acts between he and her (with the exception, she claims of the [a]lleged [m]eatloaf [c]omments); made any sexually suggestive comments about her appearance; inquired about her sex life; inquired about anyone else's sex life; made any pervasive anti-female comments; made any inappropriate sexual gestures; had pornography in the office; made any suggestions of what she should wear; discussed his sex life with her; asked her out on dates; simulated sexual acts; forced her to do anything physically; or made physical contact with her in a way she deemed to be sexual.

(ECF No. 27-25 at 26.) Defendant also asserts that the alleged discrimination Plaintiff experienced occurred in isolated instances and, therefore, was not severe or pervasive, and was not physically threatening or humiliating. (*Id.* at 26–27.)

The Court does not subscribe to Defendant's argument. More specifically, the Court is not persuaded that Plaintiff has not established the discrimination she reported experiencing was not severe or pervasive simply because what Plaintiff identified does not fit within the laundry list of harassing behaviors that Defendant has presented. Defendant does not and cannot argue that any of these specific types of behavior must be present in order for Plaintiff to establish that the alleged harassment she experienced was severe or pervasive.

Moreover, where a defendant disputes the plaintiff's version of events and the motivation for defendant's actions, "'it is not the Court's role to make credibility determinations' at the summary judgment stage; rather, plaintiff 'has sufficiently raised a genuine issue of material fact

7

as to whether [defendant's] conduct constituted harassment.'" (ECF No. 28 at 19 (citing *Pikowski v. Gamestop, Inc.*, No. 11-2732, 2013 WL 6498072, at *12 (D.N.J. Dec. 11, 2013)).) In this case, the impact of the at-issue behavior is largely dependent on credibility determinations – in particular, the specifics of Plaintiff's versions of events, Defendant's versions of events, and the motivation for Defendant's actions. The Court therefore finds that a reasonable jury could find that the reported incidents of harassment presented by Plaintiff are sufficiently pervasive or severe to constitute harassment. Summary judgment is therefore denied as to this claim.

### B.     Retaliation

To demonstrate a *prima facie* case of retaliation, Plaintiff must show that (1) she engaged in protected activity under Title VII; (2) her employer took adverse action against her; and (3) a causal link exists between the protected conduct and the employer's adverse action. *See Fogelman v. Mercy Hosp.*, 283 F.3d 561, 567–68 (3d Cir. 2002). To show a materially adverse action, Plaintiff must establish that the challenged action "might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern and Santa Fe Railway Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotations omitted). A plaintiff can meet her burden by demonstrating that an employer's conduct is likely to deter victims of discrimination from complaining about discrimination. *Id.* Whether an action is materially adverse "often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or physical acts performed." *Hare v. Potter*, 220 F. App'x 120, 128 (3d Cir. 2007) (quoting *Burlington Northern*, 548 U.S. at 68).

Defendant argues that Plaintiff cannot establish a materially adverse action was taken against her and therefore cannot demonstrate a *prima facie* case of retaliation. (ECF No. 27-25 at

22.) Plaintiff argues that Defendant "misrepresents" her retaliation claim by evaluating each instance of Bartlett's alleged retaliatory conduct separately rather than considering the totality of the circumstances. (ECF No. 28 at 21 n. 11.) Plaintiff points to the following incidents, each of which occurred within seven days of her complaints about Bartlett's sexually harassing conduct, as retaliatory conduct:

- The Safety Meeting Request;
- The Ride Along Request;
- Bartlett yelling at Plaintiff, speaking angrily to Plaintiff, expressing annoyance with Plaintiff when she asked him questions, being impatient with Plaintiff, and refusing to make eye contact with Plaintiff;
- Bartlett telling Plaintiff that if she wanted a professional work environment, she should have worked out of the corporate office;
- Bartlett unjustly criticizing Plaintiff's performance; and,
- Bartlett telling Plaintiff that the Mascaros [the family that owns Defendant, of which Mascaro, Jr. is a member] had gotten rid of people in the past and that they had the resources to do so, and that people should be careful.

(ECF No. 28 at 20–21.) As for the Safety Meeting Request, Defendant states that directing Plaintiff to attend the meeting does not constitute an adverse employment action because Plaintiff "signed off on a document that informed her on her first day that she was required to attend monthly training meetings" and because it otherwise fell within her job description. (ECF No. 27-25 at 23.) Similarly, regarding the Ride-Along Request, Defendant asserts that "such requests are not uncommon of Mascaro office staff." (ECF No. 27-25 at 24.) Plaintiff disputes

9

that the Safety Meeting and Ride-Along Requests were within Plaintiff's job duties. (ECF No. 28 at 23.)

A reasonable jury could find, that in the week after Plaintiff complained about his sexually harassing conduct, Bartlett's behavior constituted a materially adverse action that would likely deter victims of discrimination from complaining about discrimination. Further, the Court finds that there is a genuine dispute of material fact as to whether the Safety Meeting and Ride-Along Requests were part of Plaintiff's job duties. Defendant's Motion is therefore denied as to Plaintiff's retaliation claim.

### C. Constructive Discharge

To establish a constructive discharge, Plaintiff must show that Defendant "knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign." *Goss v. Exxon Office Sys. Co.*, 747 F. 2d 885, 887 (3d Cir. 1984). "To that end, '[t]he degree of harassment necessary to prove constructive discharge is greater than the minimum needed to prove a hostile work environment.'" *Dalton v. N.J. Police*, 2018 WL 305326 at *10 n.10 (D.N.J. Jan. 5, 2018) (quoting *Jennings-Fowler v. City of Scranton*, 680 F. App'x 112, 117–18 (3d Cir. 2017)). "The Third Circuit employs this objective test so that 'an employee's subjective perceptions of unfairness or harshness do not govern a claim of constructive discharge.'" *Mandel v. M&Q Packaging Corp.*, No. 9-42, 2013 WL 1899809, at *14 (M.D. Pa. May 7, 2013). This test considers various factors to determine whether an employee was forced to resign, including whether the employee: "was threatened with discharge, encouraged to resign, demoted, subject to reduced pay or benefits, involuntarily transferred to a less desirable position, subject to altered job responsibilities, or given unsatisfactory job evaluations." *Id.* at *14 (citing *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 503 (3d Cir. 2010)).

Defendant argues that Plaintiff's "conduct and characterization" of the Initial Performance Review, the Prank Phone Call, and the Meatloaf Incident, "are reflective of how a reasonable person would be expected to act when they are willing *to continue* in a situation, not when they feel compelled to resign from it." (ECF No. 27-25 at 18 (internal quotations omitted) (emphasis in original).) After these incidents, Defendant contends that Plaintiff "was more concerned with *losing* her job than feeling compelled to leave it," suggesting that she only reported the harassment incidents based on a concern that she might be fired. (*Id.* at 19 (emphasis in original).) As for Plaintiff's allegations of harassment, Defendant asserts that the Safety Meeting Request does not support Plaintiff's constructive discharge claim because "[n]o reasonable person would feel compelled to resign as a result of being asked to do something that they previously signed off on being required to do, that otherwise fell within their job description, and that similarly-situated employees did as well." (*Id.* at 21.) Defendant also argues that because (1) there is no evidence that Petrucelli ever told anyone that Plaintiff told Petrucelli during the interview process that she did not want to go on trucks, and (2) Mascaro, Jr. told Plaintiff she was not required to go on the ride-alongs, the Ride-Along Request would not compel a reasonable person to resign. (*Id.*) Finally, Defendant asserts that the general hostility that Plaintiff alleges Bartlett exhibited to her is not enough to cause a reasonable person to resign. (*Id.* at 20.)

As discussed *supra* Section IV.B., Plaintiff disputes that the Safety Meeting and Ride-Along Requests were part of her job duties. (ECF No. 28 at 26.) Moreover, Plaintiff highlights that her resignation came less than an hour after "Defendant's highest-level HR manager who was ultimately responsible for ensuring that the company complied with its EEO and anti-harassment policies . . . [responded to Plaintiff's complaint of retaliation that] he did not see any

11

issues with Bartlett's conduct and that Bartlett had a right as the manager to do as he saw fit." (ECF No. 28 at 26 (citing ECF No. 27-1 at ¶ 52).)

The Court finds that there is a genuine dispute of material fact as to whether the Safety Meeting and Ride-Along Requests were part of Plaintiff's job duties. The Court notes that two of the six factors the Third Circuit found relevant to the question of constructive discharge – altered job responsibilities and unsatisfactory job evaluations – both of which support Plaintiff's argument that she was constructively discharged, are at issue here. The Court therefore finds that a reasonable jury could find that the reported incidents of harassment presented by Plaintiff were so intolerable that a reasonable person subjected to them would resign. Defendant's Motion is therefore denied as to Plaintiff's constructive discharge claim.

### D. Punitive Damages

Punitive damages are appropriate under Title VII when the defendant acts with "malice" or "reckless indifference." 42 U.S.C. § 1981(a)(1), (b)(1). The Third Circuit model jury instructions set forth the following standard the jury should consider in reaching its decision:

> An award of punitive damages is permissible in this case only if you find by a preponderance of the evidence that a management official of [defendant] personally acted with malice or reckless indifference to [plaintiff's] federally protected rights. An action is with malice if a person knows that it violates the federal law prohibiting discrimination and does it anyway. An action is with reckless indifference if taken with knowledge that it may violate the law.

*Third Circuit Model Jury Instructions*, 5.4.2. Defendant argues in a conclusory manner that "there is no evidence of any such malice or reckless indifference on the part of Mascaro." (ECF No. 27-25 at 28.) Plaintiff points to the fact that Defendant instructed Bartlett and Director of Operations, Tim Laux, to back-date the disciplinary form that was issued to Bartlett to a date after Plaintiff filed her PHRC Complaint, thereby making it appear that disciplinary action was taken at the time that Plaintiff made her complaints about Bartlett's conduct. (ECF No. 28 at 29.)

Plaintiff also states that Defendant's delayed production of the emails revealing that the disciplinary report had been backdated until after Petrucelli's deposition serves as further evidence that Defendant acted with "malice" or "reckless indifference." (*Id.* (citing ECF No. 28-3 at ¶ 196).)

The Court finds that based upon the record evidence presented, and consistent with decisions rendered by Courts in this District, a reasonable jury could conclude that Defendant acted with 'malice' or 'reckless indifference' thereby entitling Plaintiff to punitive damages under Title VII. *See, e.g.*, *Donnelly v. Capital Vision Servs., LLC*, 644 F. Supp. 3d 97, 112 (E.D. Pa. 2022) (denying defendant's motion for summary judgment on the plaintiff's claim for punitive damages, finding it "more prudent to defer ruling until the record is developed at trial); *Cronin v. Martindale Andres & Co.*, 159 F. Supp. 2d 1, 8 (E.D. Pa. 2001) (denying defendant's motion for summary judgment on the plaintiff's claim for punitive damages, as there was a "genuine issue of fact as to whether defendants acted with malice or reckless indifference to plaintiff's right to make a sexual harassment complaint without fear of retaliation"). Defendant's Motion is therefore denied as to Plaintiff's claim for punitive damages.

## V.     CONCLUSION

For the foregoing reasons, the Court denies Defendant's Motion for Summary Judgment. An appropriate Order will follow.

**BY THE COURT:**

/s/ Hon. Kelley B. Hodge
_____
**HODGE, KELLEY B., J.**